Filed 6/27/14  In re A.T. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re A.T., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, | G049647 |
| Plaintiff and Respondent, | (Super. Ct. No. DP024267) |
| v. | O P I N I O N |
| B.M., | |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Deborah C. Servino, Judge.  Reversed.

Amy Z. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Nicholas S. Chrisos, County Counsel, Karen L. Christensen, and Debbie Torrez, Deputy County Counsel, for Plaintiff and Respondent.

\*          \*          \*

In a juvenile dependency proceeding, the court may bypass reunification services to a parent if the parent has previously failed to reunify with one of the minor's siblings and has not made reasonable efforts to correct the problem that led to the prior failure to reunify. (Welf. & Inst. Code, § 361.5, subd. (b)(10).)[1] Here, the court applied that rule and denied mother reunification services with her youngest child, A.T. Mother appeals that ruling, arguing the court applied the wrong burden of proof and failed to make appropriate findings, and that the judgment is not supported by substantial evidence. We reverse on the former ground and thus do not reach the substantial evidence question.

FACTS

Mother has five children. Her first two children, G.C. (born 2006) and E.C. (born 2008) were with father Adolfo. Her latter three children, J.T. (born 2011), N.T. (born 2012), and A.T. (born 2013), were with father Gilbert.

In 2009 a juvenile petition was filed in Los Angeles County concerning G.C. and E.C., alleging domestic violence by their father, Adolfo. That petition was dismissed based on mother and Adolfo's agreement to participate in a voluntary family maintenance (VFM) program (§ 301), which involved counseling and parental instruction for both, as well as random drug testing for Adolfo.

Although the parents were satisfactorily participating in VFM, the Los Angeles County Department of Child and Family Services (DCFS) continued to receive referrals alleging domestic violence between mother and Adolfo, leading to the removal of G.C. and E.C. from Adolfo's care. Ultimately a restraining order was issued preventing Adolfo from contacting mother.

[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

In April 2010, DCFS learned that Adolfo had been at mother's residence in violation of the restraining order. On more than one occasion, Adolfo forced himself into mother's car as she approached the residence. Adolfo was also making harassing phone calls to mother. Despite his threatening behavior, mother did not contact police as she did not want Adolfo to be arrested or incarcerated for violating the restraining order.

In May 2010 the court sustained a petition on behalf of G.C. and E.C., finding the parents had a history of domestic violence and that the mother was unable to protect the children from Adolfo. The court ordered further counseling for the parents and a 52-week domestic violence program for Adolfo.

At some point between May 2010 and March 2011, mother left Adolfo and became romantically involved with Gilbert.

In March 2011 DCFS filed another petition on behalf of G.C. and E.C. alleging that mother's new boyfriend, Gilbert, had physically abused both mother and G.C. He abused G.C. by "striking the child's back with [his] fist and striking the child's face and buttocks with a belt." The petition alleged mother had failed to protect the child because she "allowed [Gilbert] to reside in the child's home and to have unlimited access to the child." The court sustained the petition in April 2011 and ordered reunification services. The court also ordered counseling. Later that year mother gave birth to Gilbert's child, J.T. The family agreed to VFM involving parenting classes and individual counseling. Neither mother nor Gilbert, however, completed the required classes and counseling. Mother complained that Gilbert was not supportive and worried that complying with the court orders by herself would lead to separation from Gilbert.

In September 2012 mother gave birth to her second child with Gilbert, N.T. The court subsequently sustained a petition as to both of Gilbert's children, J.T. and N.T., requiring various forms of classes and counseling of both parents.

On January 8, 2013, the Los Angeles County juvenile court terminated mother's reunification services as to G.C. and E.C. (this is the predicate failure to reunify at issue here).

In May 2013 Fullerton police responded to the family residence twice due to complaints of domestic disturbances. During one visit, the officer noticed a bruise near mother's eye, but she denied it was caused by Gilbert. Earlier that month a social worker had noticed a hole in the wall that appeared to have been punched in, and a black shoe mark on the door.

In July 2013, "with there being suspicion of ongoing domestic violence between the parents and with both parents being out of compliance with their Family Maintenance case plan as to [J.T.] and [N.T.], the children . . . were removed from the care of the parents . . . ."

On October 1, 2013, mother gave birth in Orange County to a third child from Gilbert, A.T. (the minor at issue in the present proceeding). Mother tested positive for marijuana use at birth and admitted she had used marijuana two weeks prior. Mother also acknowledged that she received prenatal care, but inconsistently. She visited the doctor for the first few months after discovering the pregnancy, but not thereafter because she was fearful DCFS would take the child away. Fortunately, the baby was born healthy.

On October 3, 2013, the Orange County Social Services Agency (SSA) petitioned for a protective custody warrant as to A.T. The petition was granted that same day and a hospital hold was placed on A.T.

At around that time, mother reported that she was participating in individual counseling, in a parent education class focused on adolescent children, and had completed a six-week "Parents Beyond Conflict" class.

On October 7, 2013, SSA filed a jurisdictional petition as to A.T. At the hearing, the court ordered the minor detained.

4

Two days later, mother spoke with a social worker and reported she was attending self-help meetings five days per week, a personal empowerment program, and counseling. She was scheduled to begin individual and conjoint counseling and a parenting program. Mother stated she would call back with the days and times she and Gilbert could separately visit the minor. The social worker sent a letter to the parents, scheduling an interview for October 24, 2013. Mother and Gilbert did not attend the interview and mother did not call the social worker back concerning visitation times.

On October 23, 2013, mother had a drug patch put on her to monitor any drug use. However, she did not appear on October 30, 2013, as scheduled to have the patch replaced. She later explained that she failed to appear because she had a death in the family.

On November 5, 2013, Mother reported she got a job at a Kmart store and was scheduled to begin training that day. She was still receiving counseling and attending a weekly parenting class. She was beginning a personal empowerment program at a church the following night. That same day, the court authorized random urine drug tests. Mother missed one of her November scheduled tests, but she made three random tests in November 2013, all of which were negative.

On November 19, 2013, the court sustained the jurisdictional petition and set a contested dispositional hearing.

On November 20, 2013, a social worker visited A.T. at the maternal great grandmother's house, where A.T. was staying. The maternal great grandmother reported that mother and Gilbert had visited several times during the month of October, but had not visited A.T. in over three weeks.

On December 11, 2013, the court held the dispositional hearing where it declared A.T. a dependent of the court and ordered reunification services for Gilbert. It denied reunification services for mother, however, finding section 361.5, subdivision

5

(b)(10), applied.  Mother timely appealed from the declaration of dependency and denial of reunification services.

DISCUSSION

Mother contends the court applied the wrong burden of proof and failed to make appropriate findings supporting the denial of reunification services.  Section 361.5, subdivision (b)(10) states, "Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, *by clear and convincing evidence*, any of the following:"  "That the court ordered termination of reunification services for any siblings or half siblings of the child because the parent or guardian failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent or guardian pursuant to Section 361 and that parent or guardian is the same parent or guardian described in subdivision (a) and that, *according to the findings of the court*, this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent or guardian."  (Italics added.)

Mother observes that the court did not make any specific findings with respect to section 361.5, subdivision (b)(10), and in particular did not state it was finding that section satisfied by clear and convincing evidence.  The court simply stated, after hearing argument from all counsel involved, "The court is going to find that while mother is arguing that the (b)(10) bypass does not apply to her, the court finds that it does apply, and the court is going to be making all of the proposed orders and findings the orders and findings of the court, and among them the court is admitting into evidence the [SSA's] report dated November 5th, both of them, November 19th and December 11th, 2013."  Those reports, while they recommend reunification services be bypassed and explain

6

mother's history with domestic violence and substance abuse, do not contain proposed findings and do not mention the clear and convincing evidence standard.

When confronted with similar circumstances, the court in *In re Albert T.* (2006) 144 Cal.App.4th 207, 219 stated, "Given the importance of reunification services in the dependency system, we have considerable doubt as to the propriety of implying findings from an otherwise silent record to justify denial of those services, particularly when the Legislature has not only mandated findings by clear and convincing evidence before applying any section 361.5, subdivision (b), exception but also specifically repeated the requirement of court findings with respect to the no-reasonable-efforts prong of subdivision (b)(10)."

We agree. "It is difficult, if not impossible, to exaggerate the importance of reunification in the dependency system." (*In re Luke L.* (1996) 44 Cal.App.4th 670, 678.) "Courts must keep in mind that '[f]amily preservation, with the attendant reunification plan and reunification services, is the first priority when child dependency proceedings are commenced.' [Citation.] The failure of a parent to reunify with a prior child should never cause the court to reflexively deny that parent a meaningful chance to do so in a later case. To the contrary, the primary focus of the trial court must be to *save* troubled families, not merely to expedite the creation of what it might view as better ones." (*Renee J. v. Superior Court* (2002) 96 Cal.App.4th 1450, 1464.) Indeed, parents generally must be offered reunification services unless one of the exceptions in section 361.5, subdivision (b), applies. (§ 361.5, subd. (a).)

Section 361.5, subdivision (b)(10), authorizes the denial of reunification services where a parent has previously failed to reunify with a child, but this "otherwise harsh rule" is tempered by the strict requirement that the court find, by clear and convincing evidence, that no reasonable efforts have been made to ameliorate the problem. (*In re Harmony B.* (2005) 125 Cal.App.4th 831, 842.) Section 361.5, subdivision (b)(10) is further tempered by its specific requirement that this determination

7

be made "according to the findings of the court." We interpret this as a requirement that the court make specific factual findings based on clear and convincing evidence to support application of section 361.5, subdivision (b)(10.)

Here, the court made no such findings. Findings are particularly important in a close case, such as this, where the evidence shows the mother has made some efforts to improve her ability to care for a child. Accordingly, we reverse with instructions to the court to make appropriate findings. In addition to the evidence it already considered, the court should consider any additional evidence concerning facts that may have developed after the time of its previous order.

## DISPOSITION

The judgment is reversed.

IKOLA, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

FYBEL, J.

8